1

2

3

4

5

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

6

| In re | ) | Chapter 7 Proceedings |
|---|---|---|
7
| | ) | |
| **FRANCES DIANE TOTH**, | ) | Case No: 0:14-bk-18264-DPC |
8
| | ) | |
| Debtor. | ) | Adversary No. 0:15-ap-105-DPC |
9
| | ) | |
10
| **TROY ALLEN SHORT**, | ) | |
| | ) | |
11
| Plaintiff, | ) | |
| | ) | **UNDER ADVISEMENT ORDER** |
12
| v. | ) | |
| | ) | |
13
| **FRANCES DIANE TOTH**, | ) | |
| | ) | (Not for Publication) |
14
| Defendant. | ) | |
15
| | ) | |

16         Troy Allen Short ("Plaintiff" or "Short") seeks an order of this Court holding his

17 claims against Debtor/Defendant Francis Diane Toth ("Debtor" or "Toth")

18 nondischargeable under 11 U.S.C. § 523(a)(6).[1]  For the reasons stated below, the Court

19 will enter judgment in favor of Plaintiff and against Toth declaring nondischargeable his

20 claims against Toth in the principal amount of $184,077.30[2] plus interest at 8% from

21 May 29, 2014 through December 14, 2014, plus interest from December 15, 2014

22 ("Petition Date"), at the federal rate described in 28 U.S.C. § 1961, until paid.

23

24 [1]  Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code ("Code"), 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

25
[2]  $181,488 plus $2,589.30 awarded on May 29, 2014, by the District Court, Chaffee County, State of
26 Colorado ("Chaffee County Court").

# I. BACKGROUND[3]

## A.    Post-Bankruptcy

Debtor filed her voluntary chapter 7 petition on the Petition Date. Plaintiff commenced this adversary proceeding when he filed his complaint on February 13, 2015 (DE1)[4] seeking this Court's judgment declaring Debtor's obligations to him nondischargeable under 11 U.S.C. § 526(a)(6). Debtor filed her answer on March 1, 2015 (DE3).

On July 2, 2015, Plaintiff filed his motion for summary judgment (DE 8), Debtor responded (DE 17-20) and Plaintiff replied (DE 21-22). Oral argument was held on September 9, 2015. The Court held that, under the principles of collateral estoppel, it was bound by the Colorado Court's findings in its judgment of May 29, 2014 ("Colorado Judgment"), but that judgment did not speak to the issue of Debtor's subjective intent to cause harm to Short. This Court, therefore, set a trial on the Debtor's subjective intent. The trial was held on January 13, 2016. The parties stipulated to the admission of all exhibits. The Court heard in-person testimony from Plaintiff, Debtor, Plaintiff's fiancé, Stacy Jordan, and Debtor's son Tyler Toth ("Tyler"). Telephonic testimony was heard from Dr. Jeffrey Mahler and Bruce Hogy, both of whom were called by Debtor. After closing arguments, the Court took this matter under advisement.

## B.    Pre-Bankruptcy

Debtor and Short were in a relationship for a number of years. When that relationship soured, ugly behavior ensued. Short began threatening and intimidating Toth. A restraining order was eventually issued against him by the Denver County Court on April 4, 2011 (See Exhibit 1, ¶ 30 and Exhibit B) and remains in place to this day. For

---

[3] This Order sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. The issues addressed constitute core proceedings over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b).

[4] DE shall hereafter refer to docket entries in the adversary file in this case.

1  her part, Debtor filed numerous suits against Short in Colorado and, according to Short,

2  embarked on a campaign to destroy Plaintiff's reputation, familial relationships, and

3  business ties.

4       Following their breakup, Toth filed a small claims action against Short in Colorado.

5  That action was settled on April 11, 2011.  See Exhibit 1, ¶ 41 and Exhibit D. Short

6  contends this settlement barred further actions by Toth against him for events that occurred

7  before that settlement and that all actions brought by Toth after that date violated that

8  settlement agreement and evidenced Toth's intent to harm Plaintiff.  After the 2011

9  settlement, Toth, together with her brother, Robert Lelito ("Lelito"), sued Short in four

10  different suits brought in numerous Colorado courts.  Those actions were either dismissed

11  or consolidated into an action ultimately heard by the Chaffee County Court.  After

12  lengthy proceedings in the Chaffee County Court, on May 28, 2014, Toth wrote a hostile

13  letter (Exhibit 23) to that court the day before trial indicating, among other things, that she

14  would not attend the scheduled trial.[5]  The Chaffee County Court proceeded with its trial

15  on May 29, 2014, and subsequently entered the Colorado Judgment against Toth.  See

16  Exhibit 1.  Neither party appealed the Colorado Judgment.  Short arranged to have the

17  Colorado Judgment domesticated in the Arizona Superior Court, Mohave County.  The

18  domesticated judgment was recorded in Mohave County, Arizona on June 25, 2014.  The

19  parties and this Court all agree this Court is bound by the factual findings of the Chaffee

20  County Court.  Those findings are set out in detail in the Colorado Judgment and are more

21  fully discussed below.

22

23

24

25

26  [5] She also wrote to the court that "[Short] is a true piece of shit and I am scraping him off my shoe."

# II. ANALYSIS

## A.    Jurisdiction

Plaintiff contends (and Debtor admits)[6] this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2) and that this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(J). This Court agrees that it has jurisdiction over this Adversary Proceeding, that it is a core proceeding under § 157(b)(2) and this Court has the authority to enter a final judgment in this matter.

## B.    Burden of Proof in § 523 Actions

As with all actions under § 523, plaintiffs bear the burden of proof by a preponderance of the evidence on § 523(a)(6) claims. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S. Ct. 654, 659 (1991). While an underlying policy of the Code is to grant a "fresh start" to individual debtors, that "opportunity for a completely unencumbered new beginning [is meant for] the 'honest but unfortunate debtor'." *Id.* quoting *Local Loan Co. v Hunt*, 292 U.S. 234, 244, 54 S. Ct. 695,699 (1934).

## C.    Elements of § 523(a)(6) Claim

11 U.S.C. § 523(a)(6) provides that a debt may be nondischargeable "for willful and malicious injury by the debtor to another entity or to the property of another entity." The Supreme Court has clarified that § 523(a)(6) encompasses "only acts done with the actual intent to cause injury," as opposed to acts, done intentionally, that cause injury. See *Kawaauhau v. Geiger*, 523 U.S. 57, 61-64, 118 S. Ct. 974, 976-978 (1998).

In the context of § 523(a)(6), willful means "deliberate or intentional." *In re Britton*, 950 F.2d 602, 605 (9th Cir. 1991) (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 365, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5963, 6320-21). The debtor's

---

[6] *See* Plaintiff's Complaint, ¶ 3 (DE 1) and Debtor's Answer, ¶1, (DE 3).

1  knowledge is the focus of the willfulness inquiry. "[T]he subjective standard correctly

2  focuses on the debtor's state of mind and precludes application of § 523(a)(6)'s

3  nondischargeability provision short of the debtor's actual knowledge that harm to the

4  creditor was substantially certain." *In re Thiara*, 285 B.R. 420, 432 (9th Cir. BAP 2002)

5  (quoting *In re Su*, 259 B.R. 909, 914 (9th Cir. BAP 2001)). "[T]he willful injury

6  requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective

7  motive to inflict the injury or that the debtor believed that injury was substantially certain

8  to occur as a result of his conduct." *In re Jercich*, 238 F.3d 1202, 1208 (9th Cir. 2001)

9       "Malicious," in the context of § 523(a)(6), requires a showing of four elements.

10 First, the debtor's act must have been wrongful. Second, the act must have been done

11 intentionally. Third, the act must necessarily cause injury. Finally, the act must have been

12 done "without just cause or excuse." *In re Jercich*, 238 F.3d 1202, 1209 (9th Cir. 2001);

13 *In re Bammer*, 131 F.3d 788, 791 (9th Cir. 1997).

14       To summarize, for the Debtor's debts to be declared nondischargeable in this case,

15 under § 523(a)(6), Plaintiff must prove by a preponderance of the evidence that Debtor

16 had the subjective intent that her actions would harm Plaintiff or that she believed injury

17 was substantially certain to occur as a result of her actions. Plaintiff must also prove that

18 the Debtor's actions were wrongful, done intentionally, caused injury to Plaintiff or his

19 property, and that Debtor's actions were done without just cause or excuse.

20

21       **D.    Uncontested Facts**

22       In the parties' Joint Pretrial Statement (DE34), they agreed to the following

23 "uncontested facts deemed material":

24       1.    On May 29, 2014, the Chaffee County Court entered the Colorado Judgment

25 against Debtor and in favor of Short for $184,077.30.

26

1    2.    Debtor was found liable to Short for the torts of defamation, abuse of

2  process, intentional interference with prospective business advantage, and civil

3  conspiracy.

4    3.    In June 2014, the Colorado Judgment was domesticated in Arizona based

5  on service to a California address.

6    4.    The Colorado Judgment is *res judicata*.[7]

7

8    **E.    Analysis of Exhibits and Pleadings Discussed at Trial**

9    1.    The Colorado Judgment (Exhibit 1).

10   The Colorado Judgment noted that, on April 10 and May 2, 2014, it entered a

11  default judgment against plaintiff/counter defendant Lelito and against plaintiff/counter

12  defendant Toth on May 22, 2014.  After receiving evidence of the damages suffered by

13  Short, it then went on to enter final judgment against Toth for the amounts noted above.

14  The Chaffee County Court also made extensive factual findings and held that Short

15  satisfied all the elements on his claims against Toth (and Lelito) for abuse of process,

16  interference with prospective business advantage, defamation, and civil conspiracy.  Of

17  course, those claims are not the same as the claim brought by Plaintiff in the

18  nondischargeability action at bar.  However, this Court is bound by the facts (i.e. issues)

19  determined by Chaffee County Court's findings.  Those factual findings include, but are

20  not limited to, the following:

21       50.  Since [August 2011], however, Toth and Lelito have
         abused the legal process with the ulterior purpose of harassing
22       and damaging Short.

23

24  [7] The Restatement (Second) of Judgments encourages "courts to use the terms *claim preclusion* and *issue preclusion* rather than *res judicata* and *collateral estoppel…*" Christopher Klein and Lawrence Ponoroff, *Principles of Preclusion and Estoppel in Bankruptcy Cases*, 79 Am. Bankr. L. J. 839, 843 (2005).  In any

25  event, this Court believes the parties intended to invoke principles of issue preclusion (collateral estoppel) not *res judicata* (claim preclusion) as pertains to the Colorado Judgment.  In other words, the Colorado

26  Judgment resolved various issues pertinent to the matter before this Court but did not adjudicate the § 523(a)(6) claim before this Court.

51. Rather than asserting appropriately alleged claims in one action in an appropriate jurisdiction, Toth and Lelito commenced filing multiple baseless and vexatious small claims lawsuits against Short one after another, in multiple jurisdictions, with the intent of obtaining as many default judgments as possible and to damage, as much as possible, Short's reputation in his community.

57. Toth and Lelito have filed these multiple small claims actions without any factual or legal basis for doing so and with the sole purpose of harassing Short and damaging his reputation and his ability to earn a living.

63. By way of example only, Toth and Lelito have filed the following small claims actions after February 2, 2011 (not counting their small claims lawsuits in the City and County of Denver that resulted in the April 11, 2011 Settlement):

g. Toth (upon information and belief with the aid of her [sic] Lelito) filed two separate small claims actions at the same time in the City and County of Denver in early 2012. Short was served in Buena Vista with both lawsuits. Short appeared and defended himself and the matters were transferred to Chaffee County in early April 2012. Within two weeks of the answer, Toth filed yet another small claims action in Chaffee County (Case No. 12C150) with similarly vague allegations. Eventually all three of these actions were dismissed. Toth then filed this present complaint.

70. In addition, Toth and Lelito on multiple occasions, sent letters and emails to Short's family, business associates, and friends, containing defamatory information with the intent to interfere with and damage Short's reputation and business.

These findings by the Chaffee County Court are devastatingly damning and nearly lead this Court (but not entirely) to a ruling in favor of Short on his § 523(a)(6) claim against Toth. As noted in this Court's ruling on Plaintiff's motion for summary judgment, the Court needed further evidence on Toth's subjective intent to cause injury to Short.

1  2. Toth's May 28, 2014 letter to Judge Alderton (Exhibit 23).

2  This letter was signed by Toth and, in addition to the language quoted in footnote

3 5 above, indicated that she had pursued that case on her "own (with advise [sic]), for over

4 three years now" and that ". . . Short will not take one more dime from me. In my

5 lifetime I have had great credit, but I have no qualms about filing bankruptcy against any

6 judgment that is in his favor."

7  This letter makes it clear to this Court that Toth pursued her claims against Short

8 in Chaffee County Court for over three years with no intention of ever being held

9 accountable for her actions, under the mistaken belief that she could simply file

10 bankruptcy and fully discharge any judgment awarded in favor of Short. This Court finds

11 Toth's actions in this regard were intended to, and actually did, harm Short.

12  3. April 11, 2011 Resolution Agreement (Exhibit D).

13  This agreement settled litigation between Toth and Short in the small claims court

14 of Denver County, Colorado at Case No. 11-300126. While Short would have this Court

15 find this settlement resolved all issues between the parties through that date, the agreement

16 does not support this contention. Rather, this Court finds that agreement settled only the

17 small claims actually pending before that court. No evidence was submitted to this Court

18 indicating exactly what claims were pending before that small claims court. Nor did

19 Plaintiff identify any facts or law supporting a theory that all of Toth's claims against

20 Short should have been joined in that action or by operation of law were mandatorily

21 joined in that action. Accordingly, this Court declines to find all claims held by Toth

22 against Short as of April 11, 2011, were settled by that Resolution Agreement.

23  4. The Unsigned Letter (Exhibit A attached to Plaintiff's Exhibit 10).

24  This portion of Exhibit 10 is discussed more fully below in § II (F)(1).

25

26

1    5.    Toth's Response to Short's Answer and Toth's Answer to Short's Amended

2    Counterclaims (Exhibit 11).

3        Exhibit 11 is more fully discussed below in § II (F)(2).

4

5    **F.    Summary of Witnesses' Testimony**

6    **1.    Short**

7        Plaintiff testified that an unsigned letter marked as Exhibit A attached to Plaintiff's

8    Exhibit 10 (the "Scandalous Letter"), was received by Short's father, his father's business

9    office, Short's employer, Short's friends and business referral sources (Ken and Natalie

10   Himmelright), Short's friends and business acquaintances (Keith and Dawn Lotan) and

11   Short's friends and customers (Casey Black and Grant Blicker).    The permanent

12   restraining order (Exhibit B) against Short was attached to the Scandalous Letter.  Short

13   noted that the language in the Scandalous Letter is similar to Toth's court filings and that

14   she alone would know the recipients of the Scandalous Letter as people being close to

15   Short.  Plaintiff believes Toth authored the Scandalous Letter, but concedes he did not

16   know for a fact. Short also acknowledged the restraining order was issued against him and

17   that the restraining order required him to stay away from Toth and others.  He testified

18   that he has never been convicted of a crime, except traffic tickets.

19       The Court finds Short's testimony credible but also finds he was often antagonistic

20   towards Toth and caused Toth to be justifiably fearful of Short.

21   **2.    Debtor**

22       When examined by Plaintiff's counsel, Toth conceded she wrote her 40-page

23   response (Exhibit 11) to Short's answer in the Chaffee County Court action.  The Court

24   finds that response is very similar in nature, tone and verbiage to the Scandalous Letter.

25   Toth testified she did not draft the Scandalous Letter, had never seen it and did not send

26   the Scandalous Letter to the people identified in Short's direct testimony.  The Court does

1  not find Toth's testimony credible on this issue. The Court closely watched Toth during

2  her testimony and noted her twisting in the witness chair, continually clearing her throat,

3  shifting her eyes around the courtroom and grimacing and scowling while on the witness

4  stand, particularly when questioned about the Scandalous Letter she claimed not to have

5  authored. The Court finds Toth was the author of the Scandalous Letter and Toth caused

6  the Scandalous Letter and the restraining order against Short to be sent to the people

7  identified in Short's direct testimony.

8       During Toth's case-in-chief, she testified again, largely to the effect that the April

9  11, 2011 Resolution Agreement did not bar other claims held by her which were not the

10  subject of that settled small claims action in Colorado. The Court finds Toth is correct

11  and that she had the legal right to bring unsettled claims against Short after the execution

12  of the Resolution Agreement. However, having the legal right to bring unsettled claims

13  is quite different than ". . . filing multiple baseless and vexatious small claims lawsuits against

14  Short one after another, in multiple jurisdictions, with the intent of obtaining as many default

15  judgments as possible and to damage, as much as possible, Short's reputation in his community."

16  See ¶51 of the Colorado Judgment.

17      **3.**    **Tyler Toth**

18       Tyler Toth ("Tyler") is Debtor's 25-year-old son. He testified that he briefly lived

19  with Short, witnessed a fight at that house in February of 2011, and that he, together with

20  his mother and uncle (Lelito), obtained a permanent restraining order against Short. He

21  indicated he had claims against Short but settled those claims for $800 at the April 11,

22  2011 settlement conference. He noted that his mother was not happy with her April 11,

23  2011 settlement with Short and that she wanted to recover more from Short. Tyler knew

24  his mother feared Short but said he felt she was not trying to punish Short with her post-

25  April 2011 lawsuits. While the Court finds Tyler to have been a credible witness, the

26

1 Court does not credit Tyler's perception of his mother's intent relative to her acts against

2 Short.

### 4. Dr. Jeffrey Mahler

4 Dr. Mahler was called by Debtor to testify telephonically, not as an expert witness

5 but, rather, as a 20-year friend of Debtor who spoke to Toth on many occasions between

6 2011 and 2014, about her dealings with and feelings towards Short, especially after they

7 separated. Dr. Mahler clearly understood Toth wanted to recover money from Short but

8 did not hear anything suggesting Toth was being vindictive against Short. The Court finds

9 Dr. Mahler's testimony credible but not dispositive or even particularly helpful on the

10 issue of Toth's intentions relative to her acts against Short.

### 5. Bruce Hogy

12 Debtor called Mr. Hogy to testify telephonically. He met Short just before he met

13 Toth, back when the parties were still a couple. Short and Mr. Hogy enjoyed road

14 motorsports together, but Mr. Hogy claims Short defaulted on a loan and stole his

15 motorcycle in the spring of 2012. After breaking off his friendship with Short, Mr. Hogy

16 remained in touch with Toth. Toth never expressed to Mr. Hogy her desire to do harm to

17 Short but, rather, indicated she feared Short and desired to collect money from him. The

18 Court finds Mr. Hogy has a strong bias against and disdain for Short. More importantly,

19 the Court did not find Mr. Hogy's testimony particularly helpful on the issue of Toth's

20 intentions relative to her acts against Short.

### 6. Stacy Jordan

22 Ms. Jordan was called by Plaintiff as a rebuttal witness. She is Short's fiancé and

23 has been involved with him as a couple since May 2011. She testified that between April

24 2011 and May 2014, her friend Taff McMurray was contacted but by whom and for what

25 purpose was not made clear as her testimony was inadmissible hearsay. She also noted

26 some friends and her ex-husband were contacted by a private investigator but for whom

1 and as to what purpose was not clear as her testimony on this point was also inadmissible

2 hearsay. Finally, while she was never contacted by a private investigator, she was three

3 times contacted by a process server asking that she accept service for Short at a time that

4 Short did not live with Ms. Jordan. The Court finds Ms. Jordan's testimony credible and

5 further finds that she was approached by process servers in Toth-related lawsuits because

6 such service would potentially embarrass Short and drive a wedge between Ms. Jordan

7 and Short.

8

9 **G.   The Court's Additional Findings of Fact and Conclusions of Law**

10       In addition to this court's findings and the findings of the Chaffee County Court

11 noted above, the Court finds that, while Toth may have held unresolved claims against

12 Short after the execution of the Resolution Agreement in the 2011 Colorado small claims

13 court, Toth thereafter pursued her many lawsuits against Short with the actual intent of

14 harming Short. The Court finds the Scandalous Letter was drafted by Toth, sent by Toth

15 to the very people whom Toth knew Short would most likely not want to receive this

16 communication and that she did this to humiliate, embarrass and damage Short in both his

17 personal and business relationships. The Court finds Toth's actions were willful, that is

18 both deliberate and intentional. The Court also finds Toth's actions were malicious. In

19 this respect, the Court finds the Debtor's acts were wrongful, done intentionally, caused

20 Short's injury, and without just cause or excuse. Toth's actions were conducted with the

21 subjective intent to injure Short.

22       The damages sustained by Short and caused by Toth were in the amounts identified

23 in the Colorado Judgment. The court finds Plaintiff has sustained his burden of proof and

24 is entitled to a judgment of this Court holding nondischargeable, pursuant to 11 U.S.C.

25 § 523(a)(6), the amounts which the Chaffee County Court found owed by Toth to Plaintiff.

26 Plaintiff is directed to lodge a form of judgment consistent with this Order.

1    While the Court finds for Plaintiff in this Adversary Proceeding, the parties should

2  not take this as an exoneration of Short's behavior.  It is clear to the Court that Short has

3  behaved badly towards Toth since their 2011 breakup.  He has intimidated her and caused

4  her to be rightfully concerned for her safety.  Nevertheless, Short's bad acts do not justify

5  Toth's wrongful conduct noted in this Order.

6  **So ordered.**

7

8  Dated: February 4, 2016

9

10

11                                                        DANIEL P. COLLINS
                                                         UNITED STATES BANKRUPTCY JUDGE
12

13

14  COPY of the foregoing mailed by the BNC to:

15  Interested Parties

16

17

18

19

20

21

22

23

24

25

26